WIGDOR.

**David E. Gottlieb**
dgottlieb@wigdorlaw.com

July 5, 2023

**VIA ECF**

The Honorable Robert W. Lehrburger
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 18D
New York, NY 10007

Re: Hafizov v. BDO USA, LLP, *et al.*; Case No.: 1:22-cv-08853 (JPC)(RWL)

Dear Judge Lehrburger:

We represent Plaintiff Rinat Hafizov and write this pre-motion conference letter pursuant to Section III(D) of the Your Honor's Individual Rules in anticipation of a proposed motion to quash improper and abusive non-party subpoenas. Defendants' discovery efforts are intended solely for the improper purposes of harassing and intimidating Mr. Hafizov.

**I. Background**

As alleged in the Complaint, Mr. Hafizov's career at BDO ended because he raised a variety of complaints about his manager and her discriminatory treatment towards a variety of employees. BDO has continued a pattern of retaliation against Mr. Hafizov after he retained counsel, just as it did against the plaintiff in Sweeney v. BDO, No. 19 Civ. 07389 (GHW) after he did the same. On June 30, 2023, Defendants sent Plaintiff subpoena notices for three of Plaintiff's former employers: Morrison & Foerster, Ernst & Young and Hunton Andrews Kurth; his former girlfriend and co-worker, Shayna Becker; his former co-worker and friend, Eugene J. Gibilaro; and Law360. See Ex. 1. Plaintiff's counsel promptly objected to service of the subpoenas and stated an intention to move to quash and requested that service be stayed until the issue was resolved by the Court. When Plaintiff's counsel again inquired about whether Defendants would agree to hold off on service, Defendants stated that the subpoena to Ernst & Young had already been served, but service would be held in abeyance on the others.

**II. The Former Employee Subpoenas Are Wholly Improper**

Numerous courts have held that it is harassing, damaging, prejudicial and improper to serve subpoenas on a litigant's current or former employers. While there is no categorical rule against it, courts routinely quash such subpoenas. See e.g. Vuona v. Merrill Lynch & Co., No. 10 Civ. 6529 (PAE), 2011 WL 5553709 (S.D.N.Y. Nov. 15 2011) (in an employment dispute, quashing

subpoena seeking records on former employers); Henry v. Morgan's Hotel Grp., Inc., No. 15 Civ. 1789 (ER) (JLC), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) (quashing former employer subpoenas in employment dispute); Gambale v. Deutsche Bank, AG, No. 02 Civ. 4791 (HB) (DFE), 2003 WL 115221 (S.D.N.Y. Jan 10, 2003) (quashing subpoena seeking records from employment search firm related to former employers); Walker v. H&M Henner & Mauritz, L.P., No. 16 Civ. 3818 (JLC), 2016 WL 4742334 (S.D.N.Y. Sept. 12, 2016) (same); Guercia v. Equinox Holdings, Inc., No. 11 Civ. 6775 (TPG), 2013 WL 2156496 (S.D.N.Y. May 20, 2013) (same); Rodriguez v. NNR Global Logistics USA, Inc., No. 14 Civ. 1766 (JFB) (AKT), 2016 WL 11673310 (E.D.N.Y. Mar. 31, 2016) (same).

In quashing subpoenas of this nature, courts often find that they are harassing and prejudicial. In Vuona, an employment discrimination action, the employer-defendant subpoenaed the plaintiffs' records from a former employer on the basis that the plaintiffs had "asserted they were successful at other financial institutions." Vuona, 2011 WL 5553709 at *8. The court stated:

> The Court is completely unconvinced that these documents are relevant to this dispute . . . An employee's performance evaluations at one job and work environment may, or may not, bear on his or her success at a future job. Simply put, the issue here is whether [defendant's] decision-making as to Plaintiffs was based on valid considerations or was influenced by gender bias. On the record before the Court, Plaintiffs' work histories have nothing to do with that. And any peripheral relevance the requested documents might conceivably have is decisively outweighed by the potential for harassment or reputational injury presented by a subpoena to such a former employer. [Defendant's] request to subpoena documents from Plaintiffs' prior employers is, therefore, denied in its entirety.

See also Henry, 2016 WL 303114 at *2 ("[plaintiff] has been prejudiced by the issuance of these subpoenas to the three former employers. . . If [he] were to seek employment at any of these [employers] his application to any of them. . . might well be adversely affected by the fact that his records had been subpoenaed in this lawsuit. While Defendant makes light of this argument, it is a legitimate concern. Indeed, the Court would be hardly surprised that, if Defendant (or any other [employer]) knew that an applicant for employment had brought a lawsuit against another [employer], it might take that into account in the hiring process."); Peddy v. L'Oreal USA, Inc., No. 18 Civ. 7499 (RA) (JLC), 2019 WL 3926984 (S.D.N.Y. Aug. 20, 2019) (quashing former employer subpoenas and noting the "damaging effect" such subpoenas can have on an employee).

There is no unique justification for former employer subpoenas here. Defendants are seeking: (1) personnel files; (2) all documents reflecting the reasons why Mr. Hafizov's employment ended; and (3) all documents evidencing any complaints made. None of these categories of information are relevant to establishing whether Mr. Hafizov suffered from discrimination and retaliation while employed at BDO. See e.g. Rodriguez, 2016 WL 11673310 at *5 (plaintiff's

performance at former jobs bears no relevance to pending claims when defendants "have never asserted that [their] decision to terminate Plaintiff was influenced by her prior employment").

These subpoenas are being used as a "tactical weapon" rather than as a legitimate discovery device, and that conclusion is further bolstered by the snap service of the Ernst & Young subpoena. The "purpose of the prior service requirement is to afford the opposing party the opportunity to object to the production called for by the subpoena." See Henry, 2016 WL 303114 at *1 (citing Fed. R. Civ. P. 45(a) advisory committee's notes). "The failure to give proper notice is not an insignificant matter, and should not be lightly glossed over by a court." Id. citing Potomac Elec. Power Co. v. Elec. Motor Supply, Inc., 190 F.R.D. 372, 380 (D. Md. 1999) ("[W]hen an attorney misuses his or her power under Rule 45 to command a non-litigant to produce documents in a lawsuit to which he or she is a stranger by failing to give appropriate notice to the parties, public confidence in the integrity of court processes is eroded."); see also Rebmann v. Astec, Inc., No. 21 Civ. 879 (JLS) (SR), 2022 WL 2345945, at *3 (W.D.N.Y. June 29, 2022) ("[S]ervice of the subpoenas with knowledge of plaintiff's objections and without affording plaintiff the opportunity to resolve those objections with defense counsel ***or obtain relief from the Court prior to service of the subpoenas falls short of accepted ethical standards and far afield of the professional courtesy expected of counsel*** in this district") (emphasis added).

If that were not enough, this is not the first time Defendants have served harassing subpoenas on former employees who have asserted discrimination claims. In Sweeney, BDO did the same thing—there serving a subpoena on Mr. Sweeney's then-current employer when they were on notice a motion to quash was forthcoming. See Sweeney at Dkt. No. 47, attached hereto as Ex. 2. Clearly, this is part of BDO's tactical "playbook" and *modus operandi*.

## III. Subpoenas on Mr. Hafizov's Former Girlfriend and Colleague

Defendants noticed subpoenas to Mr. Hafizov's former girlfriend Shayna Becker and colleague Eugene Gibilaro. Both of these subpoenas seek communications *with Mr. Hafizov* that, if relevant, is available directly from him. Defendants previously requested Mr. Hafizov's communications with Ms. Becker, and Plaintiff objected on a variety of grounds. Following several meet and confers between counsel, Defendants never raised these objections or these documents as an outstanding matter. Defendants never even served a discovery request regarding communications that Mr. Hafizov had with Mr. Gibilaro. See e.g. Alcon Vision, LLC v. Allied Vision Grp., Inc., No. 19 MISC. 384 (AT), 2019 WL 4242040, at *2 (S.D.N.Y. Sept. 6, 2019) (quashing non-party subpoena where "the party seeking discovery has ample opportunity to obtain the information by discovery in the action."); Ameritox, Ltd. v. Millennium Labs, Inc., No. 12 Civ. 7493, 2012 WL 6568226, at *2–3 (N.D. Ill. Dec. 14, 2012) (granting a motion to quash nonparty subpoena "because the requests are cumulative and duplicative of discovery requests made to the party to the litigation"). This only further confirms that Defendants are using the subpoenas for an improper purpose.

**IV. The Law360 Subpoena is an Improper Intrusion on the Press**

The Second Circuit has unequivocally held that "[i]f the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims." See Lebowitz v. City of New York, 948 F. Supp. 2d 392, 394 (S.D.N.Y. 2013) quoting Gonzales v. National Broadcasting Company, 194 F.3d 29, 35 (2d Cir. 1999). These concerns "are relevant regardless whether the information sought from the press is confidential." Id. Defendants appear to be seeking Wigdor LLP's communication with Law360. It is not only improper to do so, but there is no information sought that is at all relevant to this litigation. For instance, if Mr. Hafizov's counsel emailed an inquiring reporter a quote about the case, such an email would be irrelevant to this action. Furthermore, Defendants never sought this discovery from Plaintiff or raised it in meet and confers.

For all the foregoing reasons, Plaintiff respectfully requests a conference regarding the noticed subpoenas prior to service.

We thank Your Honor for the Court's time and consideration.

Respectfully submitted,

David E. Gottlieb

Encl.