| | |
|---|---|
| **From:** | Donna Webster |
| **Sent:** | Monday, September 18, 2023 7:20 PM |
| **To:** | Lindsay Ditlow - McDermott Will & Emery LLP (lditlow@mwe.com); Meyer, Nicholas |
| **Cc:** | David Gottlieb; Monica Hincken; Christina Sabato |
| **Subject:** | Hafizov v. BDO USA, LLP, et al; Case No.: 1:22-cv-08853-JPC-RWL |
| **Attachments:** | Plaintiff's Rule 11 Letter to Defendants 9.18.23.pdf |

Counsel:

Attached please find Plaintiff's Rule 11 Letter to Defendants.

Regards,


**Donna A. Webster**
Paralegal

she/her/hers

212 257 6800
85 Fifth Avenue
New York, NY 10003

wigdorlaw.com





 Please consider the environment before printing this e-mail


This communication may contain Confidential or Attorney-Client Privileged Information and/or Attorney Work Product. If you are not the addressee indicated in this message or its intended recipient (or responsible for delivery of the message to such person(s)), do not read, copy, or forward this message to anyone and, in such case, please immediately destroy or delete this message, including any copies hereof, and kindly notify the sender by reply e-mail or phone. Thank you.



**David Gottlieb**
dgottlieb@wigdorlaw.com

September 18, 2023

**VIA EMAIL**

Lindsay Ditlow, Esq.
McDermott Will & Emery
One Vanderbilt Avenue
New York, NY 10017

      Re:    Hafizov v. BDO USA, LLP, *et al.*; Case No.: 1:22-cv-08853-JPC-RWL

Dear Lindsay,

We write in response to your letter dated September 8, 2023, contending that Plaintiff and his counsel will be in violation of Fed. R. Civ. P. 11 and Defendants will seek sanctions accordingly, unless the case is voluntarily withdrawn. We write to put you on notice, pursuant to Rule 11, that due to the absolute frivolousness of this threat and anticipated motion, to the extent any such motion is filed, we will seek sanctions against Defendants and Defendants' counsel.

**I.      Rule 11 Prohibits Frivolous Sanctions Motions**

As you are aware, "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions."  Rule 11 Advisory Committee Note; see also e.g. Koar v. United States, No. 96 Civ. 5166 (KMW), 1997 WL 1038181, at *2 n. 2 (S.D.N.Y. Sept. 2, 1997) ("[T]he making of a frivolous Rule 11 motion can itself result in sanctions against the movant.'").  The entire basis of Defendants' position that Rule 11 sanctions are warranted is essentially that Defendants deny the allegations in the Complaint that Mr. Hafizov filed.  But contesting facts in dispute would not even form the basis for a motion for summary judgment, let alone Rule 11 sanctions.  See Tobia v. The United Grp. of Cos., Inc., No. 15 Civ. 1208 (BKS) (DEP), 2016 WL 5417824, at *27 (N.D.N.Y. Sept. 22, 2016) (holding that a Fed. R. Civ. P. 11 motion cannot act as a vehicle for a defendant's request that a court resolve contested factual disputes that could only "be fully evaluated on a motion for summary judgment").

Defendants are understandably frustrated that Plaintiff has amassed a substantial volume of evidence supporting his claims of discrimination and retaliation.  In fact, apparently frustrated by the strength of Plaintiff's retaliation claims, Defendants have repeatedly (in virtually every public filing) attempted to mischaracterize Plaintiff's lawsuit as merely one involving claims of Russian heritage discrimination.  Defendants have done so despite the fact that the Complaint makes clear—and we have further reiterated this on innumerable occasions to the Court—that



while a discrimination claim is a component of the lawsuit, the gravamen of the matter is that Plaintiff's termination was in retaliation for his protected activity, as is Ms. Bernier's practice.

This begs the question why you have done that—and it is clearly because you are well aware that Mr. Hafizov's claims not only are not "sanctionable," but also because you are running from them due to their strength. We hardly need to summarize the extensive evidence already indicating that BDO, and Janet Bernier in particular, has a pattern of retaliating against employees who engage in protected conduct as it is a matter of public record and has been presented to the Court already. As just some examples:

- Ms. Bernier is alleged to have blatantly terminated a former employee, Dennis Sweeney, in response to his protected activity of making a complaint of discrimination.

- Ms. Bernier and BDO are alleged to have engaged in post-termination retaliation against Mr. Sweeney by filing counterclaims against him, seeking to enforce an unenforceable restrictive covenant, and more.

- Ms. Bernier is alleged to have bad-mouthed Mr. Sweeney and his claims against her in the office including directly to Mr. Hafizov.

- Ms. Bernier is alleged to have expressed horror that another employee ("Employee A" in the Complaint) filed a discrimination Complaint with Human Resources and then directed Mr. Hafizov and others not to give that employee additional work and to even file a bogus complaint against that employee.

- Ms. Bernier is alleged to have rejected a Jewish job candidate due to an apparent hatred for religious accommodation requests.

This is to say nothing about the evidence Mr. Hafizov has amassed regarding Ms. Bernier's offensive discriminatory conduct that permeates her workplaces, separate and apart from retaliation. Notably, not that it would matter at this stage, none of these allegations are based on Mr. Hafizov's own uncorroborated opinions or beliefs. Rather, these allegations are all confirmed by third parties and often in writing. In fact, after this action was filed, the allegation regarding Ms. Bernier's treatment of those seeking religious accommodation was confirmed through a disinterested third-party affidavit with no motive other than to tell the truth. That Ms. Bernier self-servingly denies those allegations does not create any basis whatsoever for sanctions. Furthermore, as if this were not already enough, we have every reason to be extremely confident that there will be more disinterested third-party corroboration of Ms. Bernier's offensive, discriminatory and retaliatory conduct as the litigation proceeds.

Incredibly, despite purportedly preparing to file a Rule 11 sanctions motion, Defendants' letter does not mention *any* of the above evidence that Plaintiff has obtained through his own experiences and independent investigation and without Defendants having engaged in *any*



Lindsay F. Ditlow, Esq.
September 18, 2023
Page 3

meaningful discovery or disclosure—to the contrary, Defendants have resisted every such attempt.  Despite Defendants' argument that Plaintiff's claims are frivolous, Defendants never moved to dismiss this matter—a clear concession that Plaintiff's claims are sustainable.  Despite Defendants' argument that Plaintiff's claims are frivolous, Defendants lost a motion to strike the same allegations that Defendants argue are irrelevant and subject Plaintiff to sanctions.  Despite Defendants' argument that Plaintiff's claims are frivolous, Defendants have lost several motions to compel in which Defendants have asserted the same arguments.

Defendants' Rule 11 letter makes the entirely absurd claim that after *Defendants themselves* have reviewed 6,000 documents, *they* have determined that Ms. Bernier's use of the terms Russki*, Ruski*, and Siberia were used by her in a non-discriminatory manner.  However, Defendants have not disclosed any of these documents to Plaintiff for Plaintiff or his counsel to review.  Moreover, this position begs a much larger question.  The hit report previously provided reflects that Ms. Berner's emails *also* include the terms "gay" (681 documents with hits), "homo" (377), "Jew" (4,528), "Shabbat" (28), "racist" (171), "Stereotype" (172), "South Asian" (82), "Ethnic" (453) and "Retaliate" (275), and others thousands of times.  Defendants have notably not addressed these terms in their Rule 11 letter[1] or, to date, produced any of these documents.  Defendants' further contention that because they believe retaliatory conduct has not somehow been confirmed by its cherry-picked 4,000 pages of disclosures, that Plaintiff's claims are subject to Rule 11 sanctions, is the height of absurdity.  Perhaps Defendants believe the burden rests on Plaintiff to prove that Defendants documented their own discriminatory and retaliatory conduct, and wait for Defendants to voluntarily produce "smoking gun" documentation, or their claims are automatically subject to sanctions.  The case law does not support anything of the kind and it would fly in the face of Congressional intent that underlies the anti-discrimination laws.[2]

---

[1]   Other than to say that as to the term Jew*, a "preliminary investigation" revealed "near identical" results.  We have heard about this "preliminary investigation" for some time and are unclear why this supposed investigation remains in preliminary stages.  We are also unclear what "near identical" means, as you clearly did not state that "all" usages of the term Jew* were innocuous or irrelevant.

[2]   The Second Circuit has noted that "[a]n employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent."  E.E.O.C. v. Bloomberg L.P., 967 F. Supp. 2d 816, 834 (S.D.N.Y. 2013) (citing Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991)).  "A victim of discrimination is therefore seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence."  Id.  Thus the existence of direct evidence in a case has been termed "a rare exception."  Id. (citing Bateman v. Project Hospitality, Inc., No. 07 Civ. 2085 (RRM) (RML), 2009 WL 3232856, at *8 (E.D.N.Y. Sept. 30, 2009); Sulehria v. City of N.Y., 670 F.Supp.2d 288, 305 (S.D.N.Y. 2009) ("Direct evidence that the adverse employment action was motivated by discrimination, 'a smoking gun,' is typically unavailable, however.").



Lindsay F. Ditlow, Esq.
September 18, 2023
Page 4

Rather than engage in discovery and litigate this case on the merits, Defendants' entire litigation strategy has been to avoid discovery, attempt to embarrass Plaintiff and now seek sanctions. We are prepared to litigate this matter, and our candor in discovery is evident of that approach. We have disclosed a wide array of relevant and irrelevant documents in this matter—whether those documents may ultimately help or hurt Plaintiff's case. Defendants' Rule 11 letter notes certain documents which Defendants apparently believe helps their defenses—and Defendants are free to attempt to use those documents in this proceeding as they see fit (subject to Plaintiff's full reservation of rights, including but not limited to, as to objections regarding relevance, admissibility and confidentiality).[3] But for whatever reason, Defendants appear intent on a different approach to discovery marked by sideshows and obfuscation.

Making Defendants' position all the more absurd, if that is even possible, Defendants demonstrated a documented interest in resolving this matter pre-litigation. In response to Plaintiff's demand letter and a $975,000 demand, BDO stated in writing that it "remains willing to resolve this matter amicably" and wanted to work with us towards "resolving this matter." Defendants never once stated that proposed claims were frivolous or sanctionable. BDO then offered Mr. Hafizov $32,000 to resolve his claims. Mr. Hafizov then countered with $800,000, and you replied, "Thank you and agree we are hopeful that we can work towards a resolution." BDO then offered $45,000 to resolve Mr. Hafizov's claims. Even after the initial conference before Judge Cronan, where the parties discussed mediating before the Magistrate Judge, we made a revised demand of approximately $200,000, to which you responded that it was "reasonable" and that you would get back to me. Thus, the most recent settlement communication had a difference in the parties' settlement values of only $155,000; yet, you now claim that our litigation of this case is sanctionable. Even more recently, even months after Plaintiff disclosed his text messages, you told me you thought this was a case that can and should be resolved. Never once did Defendants ever refer to Plaintiff's claims as frivolous, let alone sanctionable, during these settlement conversations. To the contrary, Defendants engaged in basic settlement negotiations which simply did not result in resolution. After the lawsuit was filed, Defendants did not even file a motion to dismiss. All Defendants have done since is engage in bad faith one-way discovery in an effort to set up a bogus sanctions motion.

---

[3] The proposition that an anti-discrimination plaintiff cannot pursue their claims, or is subject to sanctions for doing so, because they sent unflattering text messages in what they believed to be a private communication, has no support under the law. We look forward to distinguishing to the Court your sole cited case on this point, Gong v. Sarnoff, No. 23 Civ. 343 (LJL), 2023 WL 5372473, at *4 (S.D.N.Y. Aug. 22, 2023), where the complaint asserted no cognizable legal theory, the plaintiff was given an opportunity to amend following a proposed motion to dismiss and Rule 11 sanctions motion, the court forewarned the plaintiff that it would be taken very seriously and the complaint was then dismissed as lacking any plausible basis. In contrast, you offered $45,000 to resolve the claims, stated a repeated interest in resolution in response to a settlement position close to $1 million and never moved to dismiss the case.



Lindsay F. Ditlow, Esq.
September 18, 2023
Page 5

Under well-settled precedent, this is a blatant abuse of the Rule 11 process. See e.g. Hernandez v. Miller, No. 22 Civ. 6964 (VSB), 2022 WL 17584025 (S.D.N.Y. Dec. 12, 2022). In Hernandez, the court recognized that courts deny Rule 11 motions as premature when the motion would force a court to prejudge the merits of a party's legal arguments, "in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter." Id. at *1 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 56 n. 19 (1991)). For this reason, numerous other courts in this district have denied Rule 11 motions filed before summary judgment or trial. See e.g. Yousef v. Al Jazeera Media Network, No. 16 Civ. 6416 (CM), 2018 WL 6332904, at *2 (S.D.N.Y. Oct. 31, 2018) (denying a Rule 11 motion where the merits of the case had not yet been resolved); Sang Lan v. Time Warner, Inc., No. 11 Civ. 2870 (AT), 2015 WL 4469838, at *2 (S.D.N.Y. July 13, 2015) ("I decline to consider this [Rule 11] motion until the plaintiff's claims are addressed on their merits through an appropriate dispositive motion or at trial."); Herrera v. Scully, 143 F.R.D. 545, 552 (S.D.N.Y. 1992) ("[T]his request for Rule 11 sanctions is premature because the Court is not in a position to make a definitive finding pursuant to the Rule without having the complete evidence . . . before it"). You are now on notice.

**II.     Defendants' Rule 11 Threat is Made and Will be Filed for an Improper Purpose**

Given the utter frivolousness of Defendants' proposed Rule 11 motion, it is clear that Defendants plan to file it for an improper purpose. Specifically, Defendants appear to desire to file a Rule 11 motion not because of any legitimacy to the request, but instead as a basis to justify thrusting material into the public record that it deems to be embarrassing to Mr. Hafizov. Defendants have been hyper-focused not on engaging in discovery, but instead on de-designating confidential designations. The confidential designations on Plaintiff's production (which Plaintiff contends are all appropriate) do not in any way impede Defendants' litigation of this matter, nor have Defendants identified any such impediment. Thus, the focus on this dispute, during a time when the parties should be engaging in discovery, demonstrates a plain desire to foist into the public record inflammatory documents which are purely intended to embarrass Plaintiff. We intend to seek sanctions against Defendants and their counsel for this course of action.

*                              *                              *

As stated, you are now on notice that Defendants and Defendants' counsel's conduct is impermissible and sanctionable under Rule 11. If you do not withdraw your threat to seek Rule 11 sanctions, we will seek any and all available relief.

Sincerely,

David E. Gottlieb