

**David E. Gottlieb**
dgottlieb@wigdorlaw.com

October 12, 2023

**VIA ECF**

The Honorable Robert W. Lehrburger*Oral Argument Requested*
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 18D
New York, NY 10007

      Re:    Rinat Hafizov v. BDO USA, LLP, *et al.*; Case No.: 1:22-cv-08853 (JPC) (RWL)

Dear Judge Lehrburger:

We represent Plaintiff Rinat Hafizov and write in opposition to Defendants BDO USA, LLP, Janet Bernier and Matthew Dyment's (together, the "Defendants") pre-motion letter attempting to pierce the doctor-patient privilege and compel Plaintiff to produce his medical records. See Dkt. No. 121. Defendants' motion should be denied for the reasons set forth below.

**I.Background**

BDO terminated Plaintiff without ever putting him on any written discipline or performance improvement plan. After receiving a demand letter from Plaintiff's counsel and the ensuing litigation, Defendants have literally claimed that the reason for Plaintiff's termination was virtually every conceivable reason under the sun—including performance problems; behavioral issues; erratic, aggressive conduct; and unprofessional communications toward BDO partners, employees and clients. See Dkt. Nos. 17, 45 and 73. Notably, Defendants have never claimed that Mr. Hafizov was terminated for engaging in offensive or discriminatory conduct, nor have Defendants claimed to have any awareness of any of Mr. Hafizov's private text messages with his friends at the time of his termination.

Defendants claim, without any basis whatsoever, that Plaintiff "has begun to argue" that the conduct that led to his termination was explained or justified by any medical condition. Plaintiff has simply never done that in this litigation. Rather, the only time when Plaintiff ever mentioned his medical condition was when he sought to maintain confidential designation of the text message communications that never could have formed the basis for his termination since Defendants never even know about them.[1] Plaintiff also never attempted to "justify" his text

---

[1]Even then, Plaintiff only offered to provide information *ex parte* and *in camera* to the extent it would aid the court, demonstrating his continued interest in maintaining his rights under the doctor-patient privilege. See Dkt. No. 115.



Hon. Robert W. Lehrburger
October 12, 2023
Page 2

messages in any manner. Defendants cannot put Plaintiff's medical conditions "at issue" and force an "at issue" waiver of the doctor-patient privilege by virtue of a dispute over a confidentiality designation. Again, Plaintiff has never stated at any point any intention to use his medical condition in any way to explain or justify any conduct, let alone conduct purportedly related to his termination.

The issue of medical record production has already been resolved on standard terms not unique to this litigation. Plaintiff has already represented to Defendants and the Court that he is seeking "garden variety" damages. See Dkt. No. 105-1 at 3:18-20. Because Plaintiff does not intend to rely on medical evidence in support of his request for emotional distress damages, Defendants have no good reason to compel him to produce personal and confidential medical records subject to the doctor-patient privilege. The Court already agreed that "garden variety" damages do not require Plaintiff to produce additional discovery sought by Defendants. See Dkt. No. 56 at 10-23. This is consistent with all prevailing case law. See §II (exemplar caselaw cited). Nothing has changed in this regard.

## II. Argument

The psychotherapist-patient privilege is an important privilege that should be accorded strict protection. Jaffee v. Redmond, 518 U.S. 1, 10 (1996) ("Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment."). New York law recognizes a physician-patient privilege with respect to "information which [a physician] acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." C.P.L.R. § 4504(a). New York's Court of Appeals has held "the physician-patient privilege is to be given a 'broad and liberal construction.'" People v. Sinski, 88 N.Y.2d 487, 492 (1996) (quoting Matter of Grand Jury Investigation of Onondaga Cnty., 59 N.Y.2d 130, 134 (1983)).

Defendants' argument that Plaintiff's medical records are discoverable because he put his mental health "at issue" is false and fails *ab initio*. Plaintiff never put anything "at issue," as Plaintiff has never sought to justify or defend any conduct at issue in this litigation due to a medical condition. Rather, Plaintiff raised his mental health condition as part of a request for maintenance of confidential designation of documents that had no bearing on his termination and that Defendants were never even aware of until discovery. See Dkt No. 115. This cannot be construed as a waiver of his privilege. See Greenberg v. Smokla, No. 03 Civ. 8572 (RWS) (MHD), 2006 WL 1116521, at *8 (S.D.N.Y. Apr. 27, 2006) ("[T]he fact that the plaintiff is in treatment for a condition unrelated to the distress that was triggered by the misconduct does not, by itself, provide a basis for suggesting either that the treatment is in issue as a result of the plaintiff's claim or that access to treatment records is in any sense necessary or even significant for evaluating such a claim."). Contrary to Defendants' claim, Plaintiff has never put his medical condition at issue to defend against Defendants' stated reasons for his termination.



Moreover, as explained above, Plaintiff is not relying on privileged medical records to support his claim for emotional distress damages because he has voluntarily agreed to limit such claim to "garden variety" emotional distress damages.  See e.g. In re Sims, 534 F.3d 117, 132 (2d Cir. 2008) (plaintiff avoided waiver by expressly abandoning any claim to non-garden variety emotional distress damages); Kelly v. Times/review Newspapers Corp., No. 14 Civ. 2995 (JMA) (SIL), 2016 WL 2901744, at *1 (E.D.N.Y. May 18, 2016) (case cited in Defendants' letter motion;[2] court stated that, "in the emotional distress context, a claim limited to 'garden variety' damages will not generally operate to require production of medical records"); Griggs v. Weiner, No. 13 Civ. 3885 (JFB) (AYS), 2015 WL 6455298, at *3 (E.D.N.Y. Oct. 26, 2015) ("Where the claims are that the defendant's conduct caused plaintiff to suffer 'garden variety' emotional distress, the waiver is not triggered."); Sobel v. Cmty. Access, Inc., No. 03 Civ. 5642 (LAK) (MHD), 2007 WL 2076977, at *1 (S.D.N.Y. July 18, 2007) ("The courts do recognize a therapist-patient privilege, and have held with some consistency that the mere allegation that wrongful conduct by the defendant has caused emotional distress does not necessarily trigger a waiver, particularly in cases in which the plaintiff is asserting only that the misconduct caused him to suffer 'garden variety' emotional distress.").

Further, Defendants cannot put Plaintiff's medical condition at issue simply by filing a motion for de-designations with the Court.  See Dkt. No. 83; see also In re Sims, 534 F.3d at 134 ("a party's psychotherapist-patient privilege is not overcome when his mental state is put in issue only by [sic] *another party*") (emphasis added).

### III.    Conclusion

Accordingly, Plaintiff respectfully requests that the Court deny Defendants' motion seeking to pierce the doctor-patient privilege to compel production of Plaintiff's confidential medical records.

Respectfully submitted,

David E. Gottlieb

Cc:     All counsel of record (*via* ECF)

---

[2]     The only other case relied on by Defendants for a supposed privilege waiver is completely inapposite.  In Waldo v. New York City Health & Hosps. Corp., No. 06 Civ. 2614 (SLT) (LB), 2009 WL 2777003, at *17 (E.D.N.Y. Aug. 31, 2009), the defendant required an employee to undergo a psychological examination and then relied on that psychologist's report to terminate the employee because it concluded the employee was unfit to work.