

**mwe.com**

Lindsay F. Ditlow
Attorney at Law
lditlow@mwe.com
+1 212 547 5425

November 13, 2023

**VIA ECF**

Magistrate Judge Lehrburger
The Honorable Robert W. Lehrburger
United States District Court Southern District of New York
500 Pearl Street, Courtroom 18D
New York, NY 10007

Re:   *Hafizov v. BDO USA, LLP, et al.*; Case No.: 1:22-cv-08853 (JPC) (RWL)

Dear Magistrate Judge Lehrburger:

Pursuant to Local Rule 6.3, Defendants BDO USA, P.C. ("BDO"), Janet Bernier and Matthew Dyment (together, the "Defendants") respectfully submit this reply letter memorandum of law in further support of their motion for reconsideration of the Court's October 16, 2023 Order (the "Order", Dkt. No. 125) quashing Defendants' subpoena as to Ryan, LLC, a former employer of nonparty Dennis Sweeney ("Sweeney"), who Plaintiff is deposing in this action.

## I.   Preliminary Statement

In his opposition, Plaintiff asserts that Defendants' motion for reconsideration must be denied as a matter of law because Defendants have improperly either advanced new arguments or are seeking to relitigate old arguments.  *See* Dkt. No. 135.  Yet Plaintiff entirely fails to mention that Defendants are entitled to seek a motion for reconsideration in order to prevent a "manifest injustice" or to highlight material facts or law that the Court may have overlooked in making its initial decision.  *See Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (granting moving party's motion for reconsideration on such grounds); *Manney v. Reichert*, No. 13 CV 4413 (SJF) (GRB), 2014 WL 4805046, at *10 (E.D.N.Y. Sept. 26, 2014) (same).

Defendants believe that the Court may have overlooked the following material facts or law in making its initial decision: (1) documentation sought from Ryan LLC is directly relevant to Sweeney's claims of retaliation; (2) Plaintiff unambiguously lacked standing to bring the motion in the first instance, and accordingly, the Court should not have considered questions of relevancy as a matter of law (*see* cases cited at Dkt. No. 124 and 129); (3) contrary to the Court's assertion that the discovery sought is "off limits," this documentation is directly relevant and admissible for purposes of impeaching Sweeney's



One Vanderbilt Avenue   New York NY 10017-3852   Tel +1 212 547 5400   Fax +1 212 547 5444

*US practice conducted through McDermott Will & Emery LLP.*

Magistrate Judge Lehrburger
November 13, 2023
Page 2

credibility as a witness; and, (4) the Court's October 16, 2023 Order (the "Order") is respectfully inconsistent with the Court's earlier July 19, 2023 Order.[1]

## II. Insofar as Sweeney's Allegations of Retaliation are Relevant, the Subpoena Directed to Ryan LLC Seeks Information Directly Relevant to those Allegations

It is telling that within his opposition, Plaintiff has not even addressed the assertion that documentation sought from Ryan LLC is directly relevant to Sweeney's allegations of post-termination retaliation. Plaintiff can hardly deny that this is the case.

As previously noted, Plaintiff's Complaint alleges that "BDO sent Mr. Sweeney a threatening letter stating that following his termination he had engaged in conduct prohibited by a non-solicitation agreement he had signed during his employment" as part of a conspiracy to "prevent [Sweeney] from finding alternative employment," and that BDO later filed supposedly retaliatory counterclaims against Sweeney in connection with Sweeney's breach of his manager agreement. Compl. ¶¶ 119, 121.

The relevant portions of BDO's allegedly retaliatory counterclaims against Sweeney, referenced by Plaintiff in his own Complaint, are listed below:

> 11. On information and belief, Sweeney is now employed by Ryan LLC.
>
> 12. On information and belief, Sweeney made a pitch for Ryan LLC to sell state and local tax services to BDO LLP's client, Proximo Spirits.
>
> 13. On information and belief, another BDO client engaged Ryan LLC to complete reverse auditing work.
>
> 14. On October 14, 2019 BDO sent Sweeney a letter ("Letter") regarding Sweeney's obligation under his Manager Agreement, and requesting Sweeney confirm in writing by October 21, 2019 that he reaffirms his obligations under the Manager Agreement, including that he will cease and desist from any further breach and will make the required payments, in full, pursuant to the terms and conditions set forth in the Agreement.

---

[1] With the exception of the fourth argument, Defendants made each of these arguments within their initial pre-motion letter filed on October 13, 2023 in opposition to Plaintiff's motion to quash. *See* Dkt. No. 124. Defendants are not relitigating these issues, but are instead expanding upon and directing the Court's attention to material facts that the Court may have overlooked due, in part, to the space constraints imposed by pre-motion letter filings. Defendants' final argument, that the October 16, 2023 Order is inconsistent with the July 19, 2023 Order, is of course not one that Defendants could have made prior to October 16, 2023 and is permissible under the motion for reconsideration analysis. *See, e.g., Calabrese v. CSC Holdings, Inc.*, No. 02-CV-5171 (DLI) (JO) (E.D.N.Y. Mar. 7, 2006), ECF. No 287 (granting motion for reconsideration where party argued that disputed order was inconsistent with earlier order from the same court). Defendants are not attempting to advance new legal arguments but are rather arguing that the Court's language and reasoning within its October 16, 2023 Order may indicate that it had overlooked its own prior decision.



Magistrate Judge Lehrburger
November 13, 2023
Page 3

> 15. Sweeney did not respond to the Letter by October 21, 2019. Instead, Sweeney filed an Amended Complaint on October 18, 2019 asserting the Letter was retaliation for engaging in protected activity.

*See Sweeney v. BDO and Bernier*, No. 19 Civ. 07389 (GHW) (S.D.N.Y.), ECF No. 26.  Sweeney later moved to dismiss the counterclaim relating to Sweeney's employment at Ryan LLC, alleging that "BDO's Counterclaim is nothing more than further retaliation against Mr. Sweeney for raising claims under the anti-discrimination laws." *Id.*, Dkt. No. 41.

Sweeney alleged and, by incorporation, Plaintiff alleges that BDO retaliated against Sweeney via filing counterclaims asserting that Sweeney breached his manager agreement by soliciting BDO clients while at Ryan LLC.  It would therefore be a "manifest injustice" for this Court to allow Plaintiff to make these baseless allegations, decline to strike these allegations from the Complaint, permit Sweeney himself to be deposed on this subject, but then prevent Defendants from seeking evidence tending to show that BDO had legitimate, non-retaliatory reasons for filing those counterclaims against Sweeney.  Indeed, to permit such one-sided discovery warrants reconsideration.

### III.      The Subpoenas Seek Information Relevant to Sweeney's Credibility and the October 16, 2023 Order is Inconsistent with the Court's July 19, 2023 Order

Plaintiff argues that the Order is not inconsistent with the Court's July 19, 2023 Order because the Court granted Plaintiff's motion to quash with respect to the subpoenas issued to Plaintiff's former employers, in part, and further that because Sweeney is a nonparty witness, a different standard should apply to him. Plaintiff's arguments miss the mark.

First, while the Court did grant Plaintiff's prior motion to quash in part, it declined to quash those portions of the subpoenas seeking Plaintiff's personnel files and reasons why his employment at those employers ended because those matters could potentially be relevant to undermining his credibility.  *See* Dkt. No. 129.

In addition, while Plaintiff may be correct that, as a general proposition, evidence relevant to the credibility of nonparty witnesses may have less probative value than evidence pertaining to the credibility of parties, the general proposition is not generally applicable in this instance.  Under Plaintiff's theory of this case, Sweeney is not a random, tangentially related third-party with only dubious connection to the present litigation.  Instead, Plaintiff believes that Sweeney will be his star witness in demonstrating that Ms. Bernier and BDO have a *modus operandi* for retaliation.  *See generally* Dkt. No. 24.  Plaintiff believes Sweeney to be so crucial to this case that he has copied and pasted entire sections from Sweeney's earlier complaint into his own Complaint.  Indeed, this Court has noted that "Plaintiff sometimes seems confused about whose case he is litigating -- his own case or Sweeney's settled case." *See* Dkt. No. 125.

Moreover, Plaintiff has failed to address the fact that the Court's July 19, 2023 Order correctly balanced the probative value of the documentation sought against Plaintiff's privacy interest in that documentation.  *See Mirkin v. Winston Res., LLC*, No. 07CIV02734(JGK)(DF), 2008 WL 4861840, at *1 (S.D.N.Y. Nov. 10, 2008).  While it is true that the probative value of the documentation sought here



may be smaller when compared with the documentation sought from Plaintiff's employers, Plaintiff's privacy interest in the documentation sought here is <u>nonexistent</u>. The Court denied Plaintiff's motion to quash where he had standing and a reasonable privacy interest in the documentation sought, yet granted Plaintiff's second motion to quash where he had *no* standing and *no* privacy interest in the documentation.

Plaintiff disingenuously attempts to analogize the present circumstance to *Malanga v. NYU Langone Med. Ctr.*, No. 14 Civ. 9681, 2016 WL 7477561, at *1 (S.D.N.Y. Dec. 29, 2016), and falsely asserts that this Court "declined to address the standing argument" in granting the defendants' motion to quash. *See* Dkt. No. 135. In fact, the *Malanga* Court directly addressed the standing argument, stating that, contrary to the plaintiff's claims, "Dr. Formenti is still a defendant in connection with one of the two remaining claims in this action," and thus possessed standing to quash the subpoenas. *Malanga*, 2016 WL 7477561, at *1 n.1. Here, by contrast, Plaintiff unambiguously lacks a privacy interest of any kind in Sweeney's personnel files and thus fundamentally lacked standing of any kind to bring his motion in the first place.

Again, documentation from Sweeney's employers tending to show that he was not a star employee could potentially lead to the discovery of admissible impeachment evidence. To provide an illustrative example, in his Opposition, Plaintiff argues that the documentation sought from Plaintiff's own former employers was ultimately irrelevant because "the discovery produced showed that Mr. Hafizov received <u>overwhelmingly positive reviews</u>." *See* Dkt. No. 135 (emphasis added). Attached below is a sampling of the "overwhelmingly positive" praise that Plaintiff received from his pre-BDO supervisors:

- "Rinat has consistently [performed] below the expected level for his class year and experience."
- "Rinat's work product lacks any analysis."
- "Rinat was unable to take broad guidance and direction, work independently, or understand how individual tasks fit into the case as a whole. His oral communication was not clear or concise and Rinat did not convey that he understood the cases, the information in the files, or the information needed."
- "An article on Due Process that Rinat prepared . . . had numerous typographical errors and did not show a lot of attention to detail."
- "[P]rojects are often turned in late with little to no follow-up before the due date."
- "Rinat has difficulty prioritizing work. When there is a hard deadline, I will have to follow-up with him numerous times as he is chatting with other associates, taking a break or doing other projects."
- "Rinat's draft comments were not concise and were unorganized."
- "Most days, Rinat was the last person to arrive and not one of the last people to leave."

The glaring inconsistency between Plaintiff's averment and documentary evidence demonstrating that his statement is a blatant falsehood tends to impinge his credibility. To the extent that Plaintiff intends



Magistrate Judge Lehrburger
November 13, 2023
Page 5

to take the witness stand and make similar false claims, Defendants now possess strong documentary evidence to undermine Plaintiff's credibility before the eyes of the jury.

There is no reason why Defendants should be precluded from procuring similar evidence tending to undermine Sweeney's credibility along these same lines. The Court has declined to strike Sweeney's allegations from the Complaint and has permitted Plaintiff to depose Sweeney. To the extent that Sweeney's allegations are relevant to this matter, the Court should not permit one-sided discovery and refuse to offer Defendants a meaningful opportunity to uncover evidence that could potentially undermine Sweeney's credibility.[2]

IV. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for reconsideration and deny Plaintiff's motion to quash.

Respectfully,

*Lindsay F. Ditlow*

Lindsay F. Ditlow

cc: All counsel (via ECF)

---

[2] Plaintiff falsely asserts that the Court's denial of Defendants' motion to quash is justified because Defendants have declined to engage in the discovery process in good faith. In doing so, Plaintiff feigns surprise that Defendants no longer maintain employment files relating to an employee who was terminated over four years ago, and whose litigation against BDO and Ms. Bernier was resolved over three years ago without any admission of liability or wrongdoing. Plaintiff further disingenuously claims that Defendants have "refused to produce other documents ordered for production by the Court," despite the fact that Defendants have already informed Plaintiff that no responsive documents exist, and despite the fact that Plaintiff has repeatedly outright declined to respond to Defendants' proposed ESI search protocol for the past six months.

