

**mwe.com**

Lindsay F. Ditlow
Attorney at Law
lditlow@mwe.com
+1 212 547 5425

November 20, 2023

**VIA ECF**

Magistrate Judge Lehrburger
The Honorable Robert W. Lehrburger
United States District Court Southern District of New York
500 Pearl Street, Courtroom 18D
New York, NY 10007

**Re:**   *Hafizov v. BDO USA, LLP, et al.*; Case No.: 1:22-cv-08853 (JPC) (RWL)

Dear Magistrate Judge Lehrburger:

Defendants BDO USA, P.C. ("BDO"), Janet Bernier and Matthew Dyment (together, the "Defendants") respectfully submit this response to Plaintiff Rinat Hafizov's ("Plaintiff" or "Hafizov") letter dated November 10, 2023 (the "Letter") pursuant to the Court's Individual Rules of Practice.

Plaintiff's Letter indicates that he has fundamentally misunderstood (i) the scope of the Court's Orders; (ii) Defendants' discovery efforts; and, (iii) the appropriate bounds of Plaintiff's discovery.  On August 25, 2023, the Court ordered Defendants to produce documentation pertaining to discriminatory characteristics relating to nationality, ethnicity, race, or religion.  *See* Dkt. No. 104.  Defendants agreed to search for these documents, did search for these documents, and informed Plaintiff that apart from those documents they had already been produced, there were no additional, non-privileged documents responsive to these requests.  *See* Dkt. No. 105-2. Plaintiff repeatedly states that Defendants have refused to search for responsive documents, when they have done no such thing— Defendants have only declined to obsequiously consent to Plaintiff's plainly irrelevant and grossly disproportionate ESI search terms.

### I.   Background

We first write to correct the factual record, as Plaintiff has seen fit to grossly distort and mischaracterize Defendants' conduct in this matter.  Plaintiff states that "Defendants have refused to conduct an ESI search of relevant custodians' emails," and further insinuates that they have violated the Court's Orders in doing so.  Both claims are blatantly false.

First, despite Plaintiff's insinuation to the contrary, the Court has *never* ordered Defendants to conduct specific ESI searches.  The Court has ordered Defendants to search for and produce documents relating to certain enumerated categories, and Defendants have either done so or informed Plaintiff that there are no responsive documents available, as appropriate.

In addition, Defendants have never refused to conduct relevant ESI searches.  The Parties have had at least three meet and confers on this topic.  During the Parties' meet and confer on August 17, 2023, the Parties discussed their disagreements regarding certain ESI search terms proposed by Plaintiff.  Plaintiff's counsel represented that they understood Defendants' basis for objecting to certain search terms, and stated that they would provide a



One Vanderbilt Avenue   New York NY 10017-3852   Tel +1 212 547 5400   Fax +1 212 547 5444

*US practice conducted through McDermott Will & Emery LLP.*

Magistrate Judge Lehrburger
November 20, 2023
Page 2

revised ESI protocol with appropriate search terms modifiers and qualifiers for Defendants' consideration.[1]  In the spirit of good faith and for purposes of expediting the discovery process, Defendants agreed that they would begin running ESI searches and produce documents pertaining to those search terms that Defendants deemed to be noncontroversial.

On October 2, 2023, Defendants produced over 20,000 pages' worth of documentation that was collected pursuant to those noncontroversial search terms.  On October 23, 2023, Plaintiff's counsel expressed their belief that Defendants had failed to include certain supposedly relevant search terms within their production.  In response, Defendants' counsel explained that to the extent Plaintiff disagreed with Defendants' search terms, Plaintiff was entitled to submit a revised list of proposed ESI search terms, which Defendants would consider in good faith.  *See* Dkt. No. 136-1.  After Plaintiff's counsel declined to send a revised ESI protocol, Defendants repeated their request that Plaintiff submit revised ESI search terms, stating: "**[T]o the extent that you believe additional search terms would assist in obtaining relevant documentation, we request, for a second time, that you send us a revised ESI protocol that contains Plaintiff's proposed search terms**."  *Id.* (emphasis added).

Plaintiff, of course, did not send any revised search terms to Defendants.[2]  Instead, Plaintiff has chosen to entirely shirk his obligation to meet and confer in good faith with Defendants by filing the instant motion with the Court.  In doing so, Plaintiff seeks to force the Court to do the work that he is evidently unwilling to do himself.  Rule II(D) of Your Honor's Individual Rules mandate that, "Any party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party, in person or by telephone, in an effort to resolve the dispute."  Plaintiff has made absolutely no effort to meet and confer with Defendants—his counsel failed to even send Defendants a revised proposed ESI protocol before filing the instant motion, despite Defendants' repeated requests that they do so.  Plaintiff's motion should be denied on this basis alone.

## II.   Plaintiff's Proposed ESI Search Terms are Unduly Burdensome and Disproportionate to the Needs of this Case

The Federal Rules of Civil Procedure permit parties to seek discovery into nonprivileged matters that are "relevant to any party's claim or defense and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1) (emphasis added).

Hafizov is a single plaintiff who alleges that he was discriminated and retaliated against by two of his former supervisors.  As Plaintiff's counsel has represented in the past, Plaintiff's damages, at an <u>absolute maximum</u>, would total no more than $300,000.  *See* Transcript of July 19, 2023 Court Conference, attached at Dkt. No. 102-1, at 4:17–18.[3]

---

[1] To date, Plaintiff has never sent a revised ESI protocol.  In fact, Plaintiff has failed to submit any counterproposal at all since Defendants submitted their own proposed protocol on May 12, 2023 (i.e., over six months ago).

[2] Plaintiff has not even provided a clear articulation of his proposed search terms to the Court within his present pre-motion letter.  Plaintiff apparently expects both the Defendants and the Court to craft a workable ESI protocol on his behalf.  Indeed, it is not even clear which terms he is asking Defendants to search for and produce.

[3] As we have noted in the past, this figure represents a grossly inflated estimate by Plaintiff's counsel, as Plaintiff has provided no evidence whatsoever pertaining to his alleged discrimination, retaliation, or emotional distress, let alone evidence to support hundreds of thousands of dollars in damages.



Magistrate Judge Lehrburger
November 20, 2023
Page 3

For context, Defendants' agreed upon ESI search terms returned "hits" on roughly 2,000 unique documents. Nearly the entirety of this production, as Plaintiff himself noted in his Letter, was wholly unrelated to the present litigation. For example, the terms "russki*," "ruski*," and "Siberia*," with root expanders, returned plainly irrelevant results, primarily in the form of the names of BDO clients.[4] Despite the patent irrelevancy of the ESI documents, it took a team of six attorneys roughly a month and a half, constituting approximately 400 client billable hours, to identify, appropriately tag, redact, review, and produce this documentation.[5]

Based on hit report results, Defendants estimate that Plaintiff's broadly proposed searches would result in "hits" well in excess of 100,000 documents—i.e., over **fifty** times the number of documents produced during the initial ESI production. Notwithstanding the millions of dollars in legal fees, which would almost certainly dwarf any of Plaintiff's alleged damages by a factor of twenty or more, it would be impossible for such searches and production to be completed within the discovery period.

Despite the fact that Defendants have repeatedly raised these valid concerns to Plaintiff, Plaintiff has made absolutely no effort whatsoever to curtail the absolutely unfathomable scope of his proposed ESI searches. For instance, Plaintiff demands that the Court order Defendants to search for and produce documents from BDO's HR Department that contain the word "Janet." How, in any way, shape or form, would an email from BDO's HR Department concerning a vacation request from Janet Anderson, a hypothetical employee in BDO's Boca Raton office, be in any way relevant to the Plaintiff's claim that Defendants discriminated and retaliated against him? Even searching the term "Dyment" would likely result in the production of thousands or tens of thousands of irrelevant emails regarding routine payroll questions, information about COVID-19 safety protocols, fire safety information, information regarding employee benefits, information pertaining to officewide events, etc. Moreover, even seemingly relevant terms, such as "Jewish," will return nothing more than spreadsheets containing the names of BDO's clients who operate Jewish day camps or religiously-affiliated foundations.[6]

"[Search term] [m]odifiers are often needed to hone in on truly relevant documents." *Raine Grp. LLC v. Reign Cap., LLC*, No. 21CV1898JPCKHP, 2022 WL 538336, at *3 (S.D.N.Y. Feb. 22, 2022) (further holding that "what modifiers are appropriate is often best left to specialists who can interpret 'hit' reports and suggest refinements—not to the Court."). Defendants have repeatedly asked Plaintiff to propose search term connectors or qualifiers to capture documentation that is relevant and proportional to the needs of his case. Plaintiff has steadfastly refused to do so, instead insisting upon casting an ocean-sized net onto his puddle-sized claim.

"Search terms, while helpful, must be carefully crafted. Poorly crafted terms may return thousands of irrelevant documents and increase, rather than minimize the burden of locating relevant and responsive ESI." *Raine Grp.*, 2022 WL 538336, at *3. Courts will not enforce proposed search terms that are overbroad and not sufficiently tailored to obtain relevant information. *Emanuel v. Gap, Inc.*, No. 19-CV-3617 (PMH), 2020 WL 5995134, at *2 (S.D.N.Y. Oct. 9, 2020). Furthermore, costs to the producing party must be carefully evaluated by the Court.

---

[4] To further emphasize the irrelevancy of the initial ESI production, Defendants were required to produce a series of messages in which Ms. Bernier expressed excitement about a client adopting a Siberian Husky.

[5] This estimate does not include any of the time spent by Defendants' counsel's administrative staff and non-attorney document production specialists. To provide the Court with context, BDO owes legal, contractual, ethical, and professional duties to their clients to ensure that those clients' confidential tax information is not improperly disseminated. Every single page of documentation that is produced by Defendants in this litigation must be painstakingly scoured to ensure that confidential client information is appropriately redacted and designated as confidential.

[6] We further note that Plaintiff seeks to compel Defendants to search for terms such as "Gay" or "Homo*" that clearly lie outside of the scope of the Court's August 25, 2023 Order, as the Order unambiguously limited the scope of discovery to discriminatory protected characteristics related to nationality, ethnicity, race, or religion. *See* Dkt. No. 104.



*See, e.g.*, *Vaigasi v. Solow Mgmt. Corp.*, No. 11CIV5088RMBHBP, 2016 WL 616386, at *15 (S.D.N.Y. Feb. 16, 2016) ("Given [] the cost to defendants of producing additional ESI . . . requiring the production of additional ESI would be unduly burdensome.").

Plaintiff's proposed ESI protocol is hopelessly overbroad and unduly burdensome. Defendants have already conducted good faith searches of the relevant documentary records and have produced tens of thousands of pages of documentation pursuant to those efforts. The fact that none of the documentation produced thus far supports Plaintiff's bogus claims only serves to further highlight the meritless nature of those claims.

### III.    Conclusion

Plaintiff has long since abandoned any effort to focus on the merits of this case, choosing instead to send the Parties and the Court on impermissible fishing expeditions. As Defendants have repeatedly informed Plaintiff, they remain available to meet and confer with Plaintiff to the extent that he believes additional, reasonably tailored ESI searches would result in the production of relevant documentation.

For the foregoing reasons, Plaintiff's motion to compel must be denied.

Respectfully,

*Lindsay F. Ditlow*

Lindsay F. Ditlow

cc: All counsel (via ECF)

