# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RINAT HAFIZOV,

                 Plaintiff,

       v.

BDO USA, LLP, JANET BERNIER and
MATTHEW DYMENT, in their individual and
professional capacities,

                 Defendants.
-----------------------------------------------------------X

Civil Action No.: 1:22-cv-08853
(JPC) (RWL)

**PROTOCOL FOR THE DISCLOSURE, SEARCH AND PRODUCTION OF
ELECTRONIC SYSTEMS AND ELECTRONICALLY STORED INFORMATION**

      Plaintiff Rinat Hafizov and Defendants BDO USA, P.C. ("BDO" or the "Company"), Janet Bernier and Matthew Dyment (collectively, the "Parties" or individually, a "Party") hereby agree to the following protocol ("Protocol") for the search and production[1] of documents and electronically stored information ("ESI") (collectively, "Discoverable Information") in this action. Nothing in this Protocol shall limit a Party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any ESI produced in accordance with this Protocol.

**I.    GENERAL AGREEMENTS**

    **1.    Scope Of Discovery.**  The standards, limits and scope of discovery shall be governed by the Federal Rules of Civil Procedure ("FRCP"). The Parties agree to meet and confer in good faith with regard to any ESI discovery disputes, and any dispute the Parties cannot resolve amicably shall be resolved by the Court. Nothing in this ESI and Protocol shall be deemed as a waiver of the right of any Party to object to any Request for Production of Documents, Interrogatory or other discovery request.

    **2.    No Designation Of Discovery Requests.**  Productions of ESI in the reasonably useable form set out in this Protocol need not include any reference to the requests to which a document or ESI may be responsive.

---

[1] "Production" or "Produced" includes any exchange of documents or electronically stored information between the Parties, whether voluntarily or in response to a formal or informal request.

      **3.**      <u>**Limitations and Non-Waiver.**</u>  The Parties and their attorneys intend by this Protocol to make the mutual disclosures promised herein.  The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and the work product doctrine.  All Parties preserve their attorney-client privileges, work product protection and other privileges, and there is no intent by the Protocol, or Production pursuant to the Protocol, to waive these privileges or protections.  The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery requests on any grounds.  All documents produced hereunder are fully protected and covered by any protective orders or privilege orders entered by the Court.

      **4.**      <u>**Inadvertent Production.**</u>  The inadvertent production of any material constituting or containing attorney-client privileged information or work-product, or constituting or containing information protected by applicable privacy laws or regulations ("Privileged Material"), shall be governed by provisions contained in the FRCP and/or any stipulation entered into by the Parties and So-Ordered by the Court.  The production of Privileged Material shall not be a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding if the party producing the material ("Producing Party") took reasonable steps to prevent the disclosure to the receiving party ("Receiving Party"), such as privilege search term screening and privilege term highlighting.

      Upon written notification from the Producing Party to the Receiving Party identifying disclosed Privileged Material, the Receiving Party shall not review the disclosed Privileged Material in any respect; shall within seven days return, sequester, delete or destroy all copies of the disclosed Privileged Material (including any and all work-product containing such Privileged Material); shall take reasonable steps to retrieve such Privileged Material if the Receiving Party disclosed it before being notified; and shall make no further use of such Privileged Material (or work product containing such Privileged Material).  The Producing Party must promptly provide a privilege log for the claimed Privileged Information.

      The Receiving Party may object to the Producing Party's designation of disclosed information as Privileged Material by providing written notice of such objection within seven days of its receipt of a written demand for the return of the disclosed Privileged Material and provision a privilege log.  The Parties must meet and confer in good faith in an attempt to resolve any dispute regarding the designation of information as Privileged Material.  If the Parties are unable to resolve any such dispute, the issue shall be resolved by the Court after an in camera review of the disclosed Privileged Material.  Pending resolution of any such dispute by the Court, the Receiving Party shall not review and shall not use the disclosed Privileged Material in any respect.

      **5.**      <u>**Variation.**</u>  In the event that any Party identifies a circumstance where application of this Protocol is not technologically possible, would be unduly burdensome or impractical, or when another process would satisfy the objective and reach the same result with less burden, the Party will notify the Requesting Party of the exception and before implementing an alternative, specify an alternative procedure that is not unduly burdensome or impractical that will be employed, if one exists.  Upon request by the Requesting Party, those Parties will meet and confer regarding the circumstances and proposed alternative approaches.

## II.     FORM OF ESI PRODUCTION

      **1.**     **Production In Reasonably Useable Form.**  Defendants shall produce ESI in connection with this Protocol in reasonably useable form.  Except as stated in Paragraph II(2) below or as agreed hereafter by the Parties, such reasonably useable form in connection with this Protocol shall be the single-page, TIFF-image format with extracted or OCR text and associated metadata, to the extent available, as set forth in Attachment A (incorporated in full in this Protocol).  If the Receiving Party seeks production in native format of specifically-identified ESI produced originally in TIFF-image form, the Producing Party shall respond reasonably and in good faith to any such request.  Alternatively, the Parties may produce documents in native format pursuant to the format set forth in Attachment A.

      **2.**     **Documents Subject To Production In Native Format.**  Electronic spreadsheets (*e.g.*, Excel), electronic presentations (*e.g.*, PowerPoint), desktop databases (*e.g.*, Access) and audio/video multimedia files that have been identified as responsive shall be produced in native format, as well as other documents that cannot be rendered as TIFF images.

      **3.**     **Non-Standard File Types.**  Proprietary file types, such as those generated by financial software, must be discussed among the parties in advance of production to determine the optimal format of production.

      **4.**     **Deduplication and Threading.**  A Party is only required to produce a single copy of a responsive document, and a Party should globally deduplicate responsive ESI according to MD5 Hash value.  Each Party shall employ email threading and ensure the production of only the most complete iteration of an email chain.  Any deduplication tool used by a Party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space) and attachments are wholly included in another more complete email.

## III.    SEARCH OF ESI SYSTEMS

      **1.**     **Identification of ESI Systems.**  The Parties will reasonably cooperate to disclose and identify the ESI systems (i.e., content management platforms, email systems, messaging systems, storage systems, drives, devices, computer software) that may contain relevant and/or responsive ESI.  However, identification of such an ESI system does not waive any right by either Party to object to the search of any such system or to object to the production of any ESI contained within such system for any reason.

      **2.**     **Meet and Confer.**  The Parties shall meet and confer to discuss whether certain ESI systems identified pursuant to Paragraph III(1) would be unreasonable to manually search for relevant and/or responsive ESI and require the use of alternate search methodologies ("Alternate Search Methodology") to narrow the universe of material (for emails systems, certain custodians and the application certain search terms during certain time frames).  The terms of any agreed upon Alternate Search Methodology shall be attached as an exhibit to this ESI and Discovery Protocol.  Each party shall retain the sole right and responsibility to conduct the searches of its data and files for relevant and/or responsive ESI.  Any disagreements that cannot

be resolved between the parties will be submitted to the Court, and the discovery standards and burdens under the FRCP will control.

3.  **Deduplication.**  A Party is only required to produce a single copy of a responsive document, and a Party may deduplicate responsive ESI across custodians, provided, however, that all custodians who sent, received or were copied (including blind copied) on such emails are identifiable.  Duplicate messaging files shall be identified based upon a commercially accepted method (*e.g.*, MD5 hash values) for the email family, which includes the parent email and attachments.  Duplicate messaging materials will be identified at a family level, including message and attachment(s).  Email families bearing an identical value are considered a duplicate group.  The Producing Party shall produce only one document, image or native file for duplicate emails within the duplicate group to the extent practicable.  Each Party should deduplicate emails in such a way as to eliminate earlier or incomplete chains of emails, and to produce only the most complete iteration of an email chain.

4.  **Email Threading.**  Each Party may also use "email thread suppression" in such a way as to eliminate earlier or incomplete chains of emails, and produce only the most complete iteration of an email chain.  To the extent a Party uses email thread suppression, the Party will make reasonable efforts to produce a unique thread identifier for each thread, which will correlate two emails that have been identified to be part of the same thread, but that do not meet the criteria described in this paragraph of having a derivative email that fully represents a previous email.  As used in this Protocol, email thread suppression means reducing duplicative production of email threads by producing the most inclusive email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting duplicates of emails within the produced string.  For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates.  Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log.  Any deduplication tool used by a Party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space) and attachments are wholly included in another more complete email.

5.  **De-NISTing.**  Electronic file collections will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

6.  **Zero-byte Files.**  The Parties shall filter out stand-alone files identified as zero-bytes in size.

7.  **Known Documents.**  For the avoidance of any doubt, to the extent the Producing Party is aware of a document that is responsive to discovery requests, the failure to produce (or log in a privilege log) such a document shall not be justified on the basis that the document was not identified under any Alternate Search Methodology.

8.  **No Limitations Assumed.**  Nothing in this section shall limit a Party's right to seek additional discovery or additional searches beyond that of any agreed upon Alternate Search

Methodology.  The Parties shall meet and confer in good faith on any such requests before seeking the Court's intervention.

## IV. **MISCELLANEOUS PROVISIONS**

      **1.**      **Discoverability and Admissibility.**  Nothing in this Protocol shall be construed to affect the admissibility of Discoverable Information.  All objections to the discoverability or admissibility of any Discoverable Information are preserved and may be asserted at any time.

      **2.**      **Modification.**  Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Discoverable Information.  Any Party that seeks to deviate from or exceed the discovery parameters set forth herein must obtain leave of Court to do so unless all Parties otherwise consent in writing.  Before seeking Court intervention, all Parties shall meet and confer in good faith regarding any modification.

Dated: December 13, 2023
       New York, New York

| **WIGDOR LLP** | **MCDERMOTT WILL & EMERY LLP** |
|---|---|
| By: _____<br>     David E. Gottlieb | By: _____<br>     Lindsay Ditlow<br>     Michael J. Sheehan |
| 85 Fifth Avenue<br>New York, New York 10003<br>Telephone: (212) 257-6800<br>Facsimile: (212) 257-6845<br>dgottlieb@wigdorlaw.com | One Vanderbilt Avenue<br>New York, New York 10017<br>Telephone: (212) 547-5425<br>lditlow@mwe.com<br>msheehan@mwe.com |
| *Counsel for Plaintiff* | *Counsel for Defendants* |

## ATTACHMENT A

A.1.  <u>Image Files.</u>  Files produced in *.tif image format will be single page black and white *.tif files at 300 DPI, Group IV compression.  To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape).  Each *.tif file will be assigned a unique name matching the production number of the corresponding page.  Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders.  Files will not be split across folders and separate folders will not be created for each file.  Production ("Bates") numbers shall be endorsed on the lower right corner of all images.  This number shall be a unique, consistently formatted identifier that will:

*be consistent across the production;*

*contain no special characters; and*

*be numerically sequential within a given file.*

Bates numbers should be a combination of an alpha prefix along with an 8-digit number (e.g., ABC00000001).  The number of digits in the numeric portion of the Bates number format should not change in subsequent productions.  Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2.  <u>File Text.</u> Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (i.e., not one *.txt file per *.tif image).  Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text.  Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file.  The full path of the text file must be provided in the *.dat data load file.

A.3.  <u>User-Created Files.</u> Word processing files, presentation files, spreadsheet or worksheet files, and all other produced user-created files, including without limitation *.doc, *.docx, *.ppt, *pptx, *.xls, *.xlsx will be produced in the above format with tracked changes and comments showing.  To the extent there is hidden content such as tracked changes, hidden columns, mark-ups, notes, it shall be expanded and rendered in the image file.

A.4.  <u>Parent-Child Relationships.</u> Parent-child relationships (e.g., the associations between emails and their attachments) will be preserved.  Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record.  Parent-child relationships will be identified in the data load file pursuant to paragraph A.14 below.

A.5.  <u>Dynamic Fields.</u>  Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed or imaged.

A.6.   English Language.  To the extent any data exists in more than one language, the data will be produced in English, if available.  If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A.7.   Embedded Objects.  Some Microsoft Office and .RTF files may contain embedded objects.  Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF.  Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.  Embedded objects such as logos, letterheads, or backgrounds should not be extracted from emails or presentations into separate attached documents.

A.8.   Compressed Files. Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.9.   Encrypted Files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

A.10.  Scanned Hardcopy Documents.

*In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized).*

*If a producing Party is requested, and agrees, to provide OCR text for scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level \*.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.*

*In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.*

A.11.  Production Numbering.

In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached.  If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.12.  Data and Image Load Files.

*Load Files Required.*  Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

*Load File Formats.*

    **i.**    **Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.**

    **ii.**    **Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.**

    **iii.**    **Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.**

*Fields to be Included in Data Load File.*  *For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, including the European Data Privacy Regulation, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions.  The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images.  The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.*

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |

8

| CUSTODIAN(S) | Smith, John | Yes | Yes | Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon. Custodian names are consistent across all productions in spelling and format. |
|---|---|---|---|---|
| NATIVEFILE | Natives\001\001\ABC 00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |

| | | | | |
|---|---|---|---|---|
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyyformat) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |

A.13.  <u>Files Produced in Native Format.</u>  Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential."  For each native file produced, the production will include a *.tif image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively".  To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.14.  <u>Production Media.</u>  Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive.  Volumes should be numbered consecutively (ABC001, ABC002, etc.).  Deliverable media should be labeled with the name of this action, the identity of the producing Party, and the following information: Volume name, production range(s), and date of delivery.  Each production shall be encrypted and delivered separately from the decryption password.

### ADDENDUM 1 – Defendant BDO's Corporate Email Systems

I. **Alternate Search Methodology.**

    a. Pursuant to Section III(2) of the agreed-upon ESI protocol, the Parties agree to the following methodology for the search of Defendant BDO's corporate email systems, which BDO asserts are too voluminous to search manually.

    b. BDO will search its corporate email systems using the custodians, time frames and search terms set forth in Section II, below.

    c. To the extent the ESI Search Protocol results in excessive and/or overly burdensome outcomes, the Parties retain the right to meet and confer to seek revisions to the terms in good faith.  Any disagreements that cannot be resolved between the Parties will be submitted to the Court, and the discovery standards and burdens under the FRCP will control.

    d. The fact that any electronic file has been identified as being "hit" by a search term shall not prevent Defendants from withholding such file from production on the grounds that the file is not responsive or is protected from disclosure by an applicable privilege.  Any such documents should be logged on an appropriate privilege and/or work product log.

    e. Nothing in this section shall limit a Party's right to seek additional custodians and/or keywords to be applied to the ESI Search Protocol at any point during discovery.  The Parties shall meet and confer in good faith on any such requests before seeking the Court's intervention.

II. **Search Protocol**

    a. **Keyword Searches.**  The agreed upon custodians for search of Defendant corporate email systems, including custodians, search terms and date range are listed below.

| # | Custodian | Time Period | Keywords[2] |
|---|---|---|---|
| 1 | Janet Bernier **(NOTE: SEARCH WILL ONLY INCLUDE EMAILS SENT TO AN @BDO.com EMAIL ADDRESS)** | January 1, 2017 to the present | *retaliat!*<br>*shabbat*<br>*animus*<br>*racist*<br>*hostil!*<br>*ethnic!*<br>*Jewish*<br>~~gay~~ |

---

[2] Keywords are <u>not</u> case sensitive and "!" indicates a wild card root expander (e.g., appl! matches apple, applicant, application and so on).

|  |  |  |  |
|---|---|---|---|
|  |  |  | <ul><li>~~homo!~~</li><li>discriminat! w/25<ul><li>bias</li><li>race</li><li>racial</li><li>religio!</li><li>"national origin"</li><li>stereotyp!</li><li>Russia!</li><li>Christian</li><li>Italian</li><li>Black</li><li>"African American"</li><li>offensive</li></ul></li><li>"South Asian" w/25:<ul><li>accent</li><li>"hot dog"</li><li>stereotyp!</li><li>bias</li><li>harass!</li></ul></li><li>Italian w/25:<ul><li>"watch out"</li><li>untrustworthy</li><li>deceptive</li><li>crim!</li><li>stereotyp!</li><li>bias</li><li>harass!</li></ul></li><li>Ejerekhile w/25<ul><li>Black</li><li>"African American"</li><li>Christian</li><li>Jesus</li><li>Complain!</li><li>Human Resources</li><li>HR</li><li>Disciplin!</li><li>Harass!</li></ul></li><li>("terminate" OR "fire" OR "let go" OR "performance improvement plan" OR "retaliat!" OR "disciplin!") w/25:<ul><li>complaint</li><li>lawsuit</li><li>("report" w/10 ["HR" OR "Human Resources"])</li><li>investigat!</li></ul></li></ul> |

| | | | |
|---|---|---|---|
| | | | <ul><li>Dennis</li><li>Sweeney</li><li>Rinat</li><li>Hafizov</li><li>RH</li><li>RXH</li></ul>• Rinat OR Hafizov OR RH OR RXH w/25<ul><li>"human resources"</li><li>"HR"</li><li>good work</li><li>good job</li><li>great work</li><li>great job</li><li>excellent work</li><li>excellent job</li></ul> |
| 2 | Matt Dyment **(NOTE: SEARCH WILL ONLY INCLUDE EMAILS SENT TO AN @BDO.com EMAIL ADDRESS)** | May 1, 2019 to the present | • *retaliat!*<br>• *racist*<br>• *hostil!*<br>• *ethnic!*<br>• ("terminate" OR "fire" OR "let go" OR "performance improvement plan" OR "retaliat!" OR "discipline") w/25:<ul><li>Complaint</li><li>lawsuit</li><li>("report" w/10 ["HR" OR "Human Resources"])</li><li>investigat!</li><li>Dennis</li><li>Sweeney</li><li>Rinat</li><li>Hafizov</li><li>RX</li><li>RXH</li></ul>• Complain! w/25<ul><li>Rinat</li><li>Hafizov</li><li>RH</li><li>RXH</li></ul>• Offensive! w/25<ul><li>Rinat</li><li>Hafizov</li><li>RH</li><li>RXH</li></ul> |

| | | | |
|---|---|---|---|
| | | | <ul><li>Rinat OR Hafizov OR RH OR RXH w/25<ul><li>"human resources"</li><li>"HR"</li><li>good work</li><li>good job</li><li>great job</li><li>great work</li><li>excellent work</li><li>excellent job</li></ul></li></ul> |
| 3 | Nicholas Montorio **(NOTE: SEARCH WILL ONLY INCLUDE EMAILS SENT TO AN @BDO.com EMAIL ADDRESS)** | May 1, 2019 to May 18, 2022 | <ul><li>*retaliat!*</li><li>*harass!*</li><li>*racist*</li><li>*Jewish*</li><li>discriminat! w/25<ul><li>bias</li><li>animus</li><li>hostil!</li><li>race</li><li>racial</li><li>religion</li><li>"national origin"</li><li>ethnic!</li><li>stereotyp!</li><li>Russian</li><li>Christian</li><li>"South Asian"</li><li>Italian</li><li>Black</li><li>"African American"</li><li>complain!</li></ul></li><li>"South Asian" w/25<ul><li>accent</li><li>"hot dog"</li><li>stereotyp!</li><li>bias</li><li>animus</li></ul></li><li>Italian w/25:<ul><li>"watch out"</li><li>untrustworthy</li><li>deceptive</li><li>crim!</li><li>stereotyp!</li><li>bias</li></ul></li></ul> |

14

| | | | |
|---|---|---|---|
| | | | <ul><li>    o  animus</li><li>Ejerekhile w/25:<ul><li>o  Black</li><li>o  "African American"</li><li>o  Christian</li><li>o  Jesus</li><li>o  Complain!</li><li>o  Human Resources</li><li>o  HR</li><li>o  Disciplin!</li><li>o  Harass!</li></ul></li><li>("terminate" OR "fire" OR "let go" OR "performance improvement plan" OR "retaliat!" OR "discipli!") w/25:<ul><li>o  complain!</li><li>o  lawsuit</li><li>o  ("report" w/10 ["HR" OR "Human Resources"])</li><li>o  investigat!</li><li>o  Dennis</li><li>o  Sweeney</li><li>o  Rinat</li><li>o  Hafizov</li></ul></li><li>Complain! w/25<ul><li>o  Rinat</li><li>o  Hafizov</li><li>o  RH</li><li>o  RXH</li></ul></li><li>Offensive! w/25<ul><li>o  Rinat</li><li>o  Hafizov</li><li>o  RH</li><li>o  RXH</li></ul></li><li>Rinat OR Hafizov OR RH OR RXH w/25<ul><li>o  "human resources"</li><li>o  "HR"</li><li>o  good work</li><li>o  good job</li><li>o  great work</li><li>o  great job</li><li>o  excellent work</li><li>o  excellent job</li></ul></li></ul> |
| | ~~Tenielle Comerford Amanda Turcott~~ | ~~May 1, 2019 to present~~ | <ul><li>~~Bernier w/25~~<ul><li>~~o  complain!~~</li><li>~~o  discriminat!~~</li></ul></li></ul> |

15

|  |  |  | <ul><li>~~harass!~~</li><li>~~retaliat!~~</li><li>~~racist~~</li><li>~~bias~~</li><li>~~stereotyp!~~</li><li>~~offensive!~~</li><li>~~investigat!~~</li><li>~~ethnic!~~</li></ul><ul><li>~~Dyment w/25~~<ul><li>~~complain!~~</li><li>~~discriminat!~~</li><li>~~harass!~~</li><li>~~retaliat!~~</li><li>~~racist~~</li><li>~~bias~~</li><li>~~stereotyp!~~</li><li>~~offensive!~~</li><li>~~investigat!~~</li><li>~~ethnic!~~</li></ul></li><li>~~Montorio w/25~~<ul><li>~~complain!~~</li><li>~~discriminat!~~</li><li>~~harass!~~</li><li>~~retaliat!~~</li><li>~~racist~~</li><li>~~bias~~</li><li>~~stereotyp!~~</li><li>~~offensive!~~</li><li>~~investigat!~~</li><li>~~ethnic!~~</li></ul></li></ul> |