

mwe.com

Lindsay F. Ditlow
Attorney at Law
lditlow@mwe.com
+1 212 547 5425

February 20, 2024

**VIA ECF**

Magistrate Judge Lehrburger
The Honorable Robert W. Lehrburger
United States District Court Southern District of New York
500 Pearl Street, Courtroom 18D
New York, NY 10007

**Re:**   *Hafizov v. BDO USA, LLP, et al.*; **Case No.: 1:22-cv-08853 (JPC) (RWL)**

Dear Magistrate Judge Lehrburger:

Defendants BDO USA, P.C. ("BDO"), Janet Bernier and Matthew Dyment (together, the "Defendants") respectfully submit this response to Plaintiff Rinat Hafizov's ("Plaintiff") letter dated February 14, 2024.  For the reasons set forth herein, Plaintiff's request for a 60-day extension of fact discovery must be denied.

### I.     Background on ESI Production

For the past seven months, Plaintiff has peddled the fiction that "Ms. Bernier uses language regarding protected categories and classes based on information . . . from hit reports provided by Defendants on the corporate emails." *See* Dkt. No. 73; *see also* Dkt. No. 102 ("What is also clear from even just the mere hit report provided by Defendants is that Ms. Bernier likely uses improper language regarding protected characteristics.").  As early as July 13, 2023, Defendants informed Plaintiff that his representations regarding the Individual Defendants' use of protected class terms were nothing more than imaginary falsehoods.  Defendants further warned Plaintiff that using his proposed search terms would likely result in the production of thousands of irrelevant documents:

> Plaintiff asserts that Defendants' hit report indicates that Ms. Bernier frequently uses discriminatory and/or disparaging words within her corporate communications. However, Defendants would like to clarify that many of Plaintiff's proposed search terms, on which the hit report was based, utilize root expanders. These root expanders may result in "hits" for innocuous or irrelevant terms. For example, a search for the term "Jew*", incorporating a root expander, may return results in which Ms. Bernier has used the term "jewelry" or "jeweler." Indeed, the fact that Plaintiff's proposed search terms are found within tens of thousands of irrelevant documents only further supports Defendants' contentions regarding the vast overbreadth of those terms.

*See* Dkt. No. 83.  Since that date, Defendants have **repeatedly** warned Plaintiff that his proposed ESI search terms would result in the production of tens of thousands of irrelevant "hits" containing nothing more than the names of BDO clients or otherwise immaterial information.  *See, e.g.*, Dkt. No. 103; Dkt. No. 105-2; Dkt. No. 106-2; Dkt. No. 145.

Undeterred, Plaintiff insisted on embarking upon yet another meritless fishing expedition, representing just the latest in his prodigious series of such ventures.  Plaintiff filed a pre-motion letter to compel, demanding that



One Vanderbilt Avenue   New York NY 10017-3852   Tel +1 212 547 5400   Fax +1 212 547 5444

*US practice conducted through McDermott Will & Emery LLP.*

Magistrate Judge Lehrburger
February 20, 2024
Page 2

Defendants search for and produce documents pursuant to his search terms. *See* Dkt. No. 136. Defendants again warned that Plaintiff's proposed search terms would result in the production of thousands of irrelevant documents. *See* Dkt. No. 145. Ultimately, the Court granted Plaintiff's motion, in part, and mandated that Defendants search for and produce documentation in accordance with many of Plaintiff's proposed ESI search terms on December 18, 2023. *See* Dkt. No. 160.

In accordance with the Court's Order, Defendants began the task of collecting, assessing, redacting, withholding, assembling, and producing over 75,000 pages' worth of documentation, <u>documentation that had been demanded by Plaintiff himself and that Defendants had been ordered by the Court to produce</u>. Despite the manifest irrelevancy of most of the documents that Defendants had been compelled by Plaintiff to produce, the production process required a considerable amount of time and resources. Defendants needed to identify documents as containing search term hits, carefully scour those documents for privileged or confidential information, and finally redact or withhold the documents accordingly.[1] Defendants completed this process as expeditiously as possible and transmitted the vast majority of the documents to Plaintiff's counsel on February 7, 2024.[2]

## II. Plaintiff's Attempt to Delay this Matter Must be Denied

The Court has granted two discovery extension motions in the past. *See* Dkt. No. 97; 156. On December 13, 2023, the Court issued an Order stating: "Fact discovery is extended to February 29, 2024 for purposes of completing ESI discovery, fulfilling any currently outstanding discovery obligations, and taking depositions . . . . **There shall be no further extensions absent extraordinary circumstances**." *See* Dkt. No. 156.[3]

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The Rule 16(b)(4) 'good cause' inquiry is primarily focused upon the diligence of the movant in attempting to comply with the existing Scheduling Order and the reasons advanced as justifying that Order's amendment." *Ramchandani v. CitiBank Nat'l Ass'n*, 616 F. Supp. 3d 353, 357 (S.D.N.Y. 2022). The burden of demonstrating good cause rests with the movant. *Id.*

In *Century Jets Aviation LLC v. Alchemist Jet Air LLC*, this Court had warned the respective parties that the discovery completion date would not be extended "<u>except upon a showing to the Court of extraordinary circumstances</u>." No. 08 CIV. 9892 GBDKNF, 2011 WL 724734, at *1 (S.D.N.Y. Feb. 8, 2011) (emphasis added). Shortly before the close of discovery, the defendant submitted a motion requesting 60 additional days to complete discovery. *Id.* The defendant argued that it needed additional time to complete depositions because the

---

[1] For context, BDO owes certain legal, contractual, ethical, and professional duties to their clients to ensure that those clients' confidential tax information is not improperly disseminated. Every single page of documentation that is produced by Defendants in this litigation must be painstakingly scoured to ensure that confidential client information is appropriately redacted and designated as confidential. However, such precision is not required by Plaintiff's review, as his counsel must only identify documents relevant to this litigation and, thus, reciprocal review time is not necessary.

[2] For technical reasons, a separate, small production of 28 documents was produced to Plaintiff's counsel on February 9, 2024.

[3] Notably, in relation to the previous request for a 60-day extension of discovery, Plaintiff represented that this timeframe would be sufficient to complete all of their outstanding discovery needs, while being fully aware of the volume of documents Defendants contended would result from Plaintiff's proposed ESI searches. *See* Dkt. No. 155.



Magistrate Judge Lehrburger
February 20, 2024
Page 3

opposing party had failed to timely submit its "paper discovery." *Id.* at *2.  This Court rejected the defendant's arguments:

> It is unclear why [the defendant] believed it needed to wait until the completion of document discovery to depose witnesses.  Fed.R.Civ.P. 26(d)(2) provides that, unless the court orders otherwise, "methods of discovery may be used in any sequence" and "discovery by one party does not require any other party to delay its discovery."  While "[i]n a majority of cases, interrogatory and document discovery are completed prior to depositions.... [ ] this is certainly not a hard and fast rule[.]" [Citation omitted]
> . . .
> The Court will not condone the parties' behavior by providing additional time to engage in discovery.  [The defendant] has failed to demonstrate good cause for enlarging the time to complete discovery—let alone "extraordinary circumstances," as required by the assigned district judge in the case management plan.

*Id.* at *2–3.  Here, the only excuse proffered by Plaintiff for yet again delaying the final resolution of this matter is Defendants' supposed delay in providing ESI documentation.  Such an excuse surely does not pass muster as an "extraordinary circumstance" justifying a further extension of discovery.

First, Plaintiff <u>demanded</u> that Defendants produce an enormous amount of ESI documentation, over Defendants' repeated warnings and objections that his proposed ESI searches were wildly overbroad in scope.  Plaintiff adamantly opposed any attempt to tailor his ESI demands into anything resembling relevant or proportionate requests, resulting in Defendants' Court-ordered production of 75,000 pages' worth of documentation.  Plaintiff now attempts to further profit from his own discovery misconduct and further prejudice the Defendants with unnecessary delays.

Second, it is plainly apparent that the *vast* majority of the production are false "hits" that are wholly irrelevant to this matter.  It admittedly took a significant amount of time for Defendants to assemble, redact, and tag this documentation as containing either privileged or confidential material.  However, it does not require even close to an equivalent amount of time to review the production, because it should be clear from even a cursory glance that almost all of the documents are wholly irrelevant to Plaintiff's claims.  Even simply looking at the heading or subject line of a Tax Notes or Bloomberg Law article is enough to inform the reviewer that the document is irrelevant to the case.  *See* Sample of ESI Production, attached hereto at Exhibit A.

Third, Plaintiff has offered no explanation whatsoever as to why Defendants' timely submission of a large volume of ESI documentation justifies the postponement of every single witness' deposition.  As this Court recognized in the aforementioned *Century Jets* case, Federal Rule of Civil Procedure 26(d)(2) provides that "methods of discovery may be used in any sequence" and "discovery by one party does not require any other party to delay its discovery."  2011 WL 724734, at *2–3.  While Plaintiff may have *preferred* to have months to review Defendants' ESI production prior to deposing the witnesses, the submission of a large volume ESI production a few weeks before such scheduled depositions is not such an "extraordinary circumstance" as to justify yet another lengthy delay to fact discovery, especially when it is Plaintiff himself who demanded this documentation in the first place.[4]

---

[4] The *Century Jets* Court found that even a party's *untimely* submission of paper discovery failed to meet the definition of an "extraordinary circumstance" justifying an extension of fact discovery.  2011 WL 724734, at *2.  Here, Defendants produced the ESI documentation over three weeks prior to the close of fact discovery.



Magistrate Judge Lehrburger
February 20, 2024
Page 4

Finally, Plaintiff's delaying tactics have caused and are continuing to cause considerable harm to both the Individual Defendants and the various nonparties to this matter. Ms. Bernier, Mr. Dyment, Ms. Tenielle Comerford, and Ms. Kristen Fasano were each informed that they would be deposed during specific dates in February ***by the Plaintiff***. In the midst of preparations for tax filing season, the "busy season" in the tax accounting industry, all four individuals rearranged their schedules to make themselves available for dates on which they believed they were being deposed. Just days before the witnesses' deposition dates, Plaintiff unilaterally informed Defendants that he was postponing <u>all of the depositions that he had noticed</u>. Plaintiff cannot voluntarily withdraw from deposing witnesses on dates that he had noticed, then cry foul that he has not had an opportunity to depose those same witnesses.[5]

### III.    Conclusion

Plaintiff filed his Complaint against Defendants on October 17, 2022, now over 16 months ago. During this time, Defendants have been forced to produce close to 100,000 pages' worth of documentation, expended hundreds of billable attorney hours, and been subjected to a constant tirade of baseless and defamatory allegations. Despite the staggering breadth of discovery that this Court has thus far permitted, Plaintiff has proven unable to locate even a modicum of support for his baseless claims.[6]

Plaintiff fancies the discovery end date in this matter to be the end of a rainbow—something that is just over the horizon, but never quite within reach, and always accompanied by the fairytale that some treasure is yet to be held. When is enough, enough? How long will the Court permit Plaintiff to drag out the inevitable outcome of Defendants' motion for summary judgment?

For the foregoing reasons, Defendants respectfully request that Plaintiff's request be denied.

Respectfully,

*Lindsay F. Ditlow*

Lindsay F. Ditlow

cc: All counsel (via ECF)

---

[5] Plaintiff seeks to further harass the deponents by pushing the depositions into March and April, the peak of the "busy season" in the tax accounting industry. Defendants' counsel will also be out of the office for ten days during the Passover holidays, meaning that it may in fact not be possible to reschedule depositions during Plaintiff's proposed timeframe.

[6] Such lack of evidentiary support is hardly surprising when one recalls that Plaintiff's lawsuit was brought for frivolous purposes. Fourteen (14) months prior to Plaintiff's termination, Plaintiff outlined his intent to bring this meritless lawsuit, stating: **"I wanna fuck these people over . . . If I get fired, I will seriously sue [Ms. Bernier] just for fun . . ."** Similarly, on a separate occasion, Plaintiff stated: **"I hope I get fired, so I can sue [BDO] . . . [Shayna: Why are you suing them] . . . Why the fuck not? . . . If I get fired, I'm suing them."**

